**DOCKETED**

**DEC 2 2 2003**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

DEC 1 9 2003

|  |  |
|---|---|
| RAYMOND SPAGNOLA, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) No. 02 C 0270 ) |
| GREGORY J. KILREA, LOU WEISBACH, JOHN R. KELLEY JR., LINDEN D. NELSON, BRADLEY KEYWELL, and ERIC LEFKOFSKY, | ) Judge James F. Holderman ) ) ) |
| Defendants. | ) |

### NOTICE OF FILING

**PLEASE TAKE NOTICE THAT** on Friday, December 19, 2003, we filed with

the Clerk of the United States District Court for the Northern District of Illinois, Eastern

Division, **DEFENDANTS ERIC LEFKOFSKY & BRAD KEYWELL'S JOINT**

**LOCAL RULE 56.1(A)(3) STATEMENT**, a copy of which is served upon you.

Dated: December 19, 2003

By: _____
Allan T. Slagel
Howard A. Davis
Patricia S. Spratt
Shefsky & Froelich Ltd.
444 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60611
(312) 527-4000

Robert P. Cummins
Cummins & Cronin LLC
77 W. Wacker Drive, Suite 4800
Chicago, Illinois 60601
(312) 578-0500

Co-Counsel for Defendant Bradley Keywell

886188_1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FILED**

DEC 1 9 2003

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

RAYMOND SPAGNOLA, Individually And On )
Behalf Of All Others Similarly Situated, )
                                        )
                    Plaintiffs,         )
                                        )
        vs.                             )     No. 02 C 0270
                                        )
GREGORY J. KILREA, LOU WEISBACH, JOHN   )     Judge James F. Holderman
R. KELLEY JR., LINDEN D. NELSON,        )
BRADLEY KEYWELL, and ERIC LEFKOFSKY,    )
                                        )     **DOCKETED**
                    Defendants.         )
                                        )     DEC 2 2 2003

## DEFENDANTS ERIC LEFKOFSKY & BRAD KEYWELL'S JOINT LOCAL RULE 56.1(a)(3) STATEMENT

Defendants Eric Lefkofsky and Bradley Keywell, by their undersigned attorneys, hereby submit under Local Rule 56.1(a)(3) their statement of facts not in dispute which entitle them to summary judgment on all counts alleged against them.

## PARTIES

1.      Plaintiffs Howard Mittelman, David H. Mendelson, Lauren S. Mendelson, Darren Lisse, Patrick A. Sheridan and Dan Lettieri were appointed Lead Plaintiffs pursuant to an Agreed Order Appointing Lead Plaintiffs entered by this Court in this Action on March 26, 2002 and represent a class of purchasers of the common stock of HA-LO Industries, Inc., a Delaware corporation ("HA-LO"), between February 18, 1999 and on or before July 30, 2001 (the "Class Period"). (Order, Docket 23); (App. D, Complaint ¶ 1, Docket 27.) The Court certified Plaintiffs' class on March 31, 2003. (Order, Docket 120.)



2. Not a party here, HA-LO was a public company whose shares were traded on the New York Stock Exchange ("NYSE"). During the Class Period, HA-LO common stock traded on the NYSE under the ticker symbol "HMK." (App. D, Complaint ¶ 9, Docket 27) HA-LO filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on July 30, 2001 and is currently the debtor in possession in its bankruptcy case pending in the Northern District of Illinois. (Simon Dep. at 306.) [1]

3. Defendants Greg J. Kilrea ("Kilrea"), Lou Weisbach ("Weisbach"), and John R. Kelley, Jr. ("Kelley") have served as officers and/or directors of HA-LO throughout the Class Period. (App. D, Complaint ¶¶ 10-11, 13, Docket 27.)

4. Defendant Linden D. Nelson ("Nelson") served as a director of HA-LO from approximately January 1997 to March 20, 2001. (App D., Complaint ¶ 16, Docket 27.)

5. Defendant Bradley Keywell ("Keywell") was President of HA-LO from May 3, 2000 to February 27, 2001. (Keywell Dep. at 268); (Keywell Dep. (Kelley) at 107.) In addition, Keywell served as a director of HA-LO from May 3, 2000 to June 23,

---

[1] All citations to the record will be to the appendix to this Statement of Facts. References to deposition testimony or deposition exhibits will indexed alphabetically, with deposition exhibits following deposition testimony. All deposition testimony indexed was taken in this case unless otherwise referenced, and will be referenced to "Deponent Dep. at x." or "Deponent, Ex. __". Citations to depositions taken in *HA-LO v. Kelley*, 02-A-02456, will be to "Deponent Dep. (Kelley) at x. Citations to depositions taken in HA-LO v. Credit Suisse First Boston, 02-A-02455, will be to "Deponent Dep. (CSFB) at x." All non-deposition exhibits will be indexed as "Appendix X."

2

2001. (Keywell Dep. (Kelley) at 107); (App. E, Keywell Answer ¶ 19, Docket 82); (App. D, Complaint ¶ 14, Docket 27.)

6. Defendant Eric Lefkofsky ("Lefkofsky") served as Chief Operating Officer of HA-LO from May 2000 to May 2001. (App. D, Complaint ¶ 15, Docket 27); (Lefkofsky Dep. (Kelley) at 7-8.) In addition, he was a director of HA-LO from May 3, 2000 to August 2, 2001. (App. D, Complaint ¶ 15, Docket 27.)

## JURISDICTION AND VENUE

7. Plaintiffs assert claims pursuant to Sections 10(a) and 20(b) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission, 17 C.F.R. § 240.10b-5. (App. D, Complaint ¶ 4, Docket 27.)

8. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. (App. D, Complaint ¶ 5, Docket 27.) *In personam* jurisdiction is not contested.

9. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act, 15 U.S.C. 78aa, and 28 U.S.C. §1391(b) because a substantial part of the alleged events or omissions purportedly giving rise to plaintiffs' claims occurred in this judicial district. (App. D, Complaint ¶ 6, Docket 27.)

## SUBSTANTIVE FACTS

10. During 1998 and 1999, the Internet Industry proliferated. Many companies formed to try and revolutionize traditional business models by using the

3

Internet to sell, advertise and administer the ordering, purchasing, delivery and servicing of their products and services to consumers at lower cost.

**Background of Starbelly**

11. In early 1999, Bloomfield Partners Family Limited Partnership ("Bloomfield"), Coventry Partners Family Limited Partnership ("Coventry"), and Carramore Limited Partnership ("Carramore") incorporated TheZebra.com, Inc. ("Zebra") to sell custom-designed promotional products over the Internet. (Keywell Dep. at 25); (Keywell Dep. (Kelley) at 8.) Custom-designed promotional products include "soft" goods, like t-shirts or hats, and "hard" goods, like coffee mugs or golf balls. (Shkolnick (Kelley) Dep., Ex. 10 at 1.) Customers ordered these goods for promotional, entertainment, and other marketing purposes. (*Id.*) Keywell is associated with Bloomfield, Lefkofsky is associated with Coventry, and Richard Heise ("Heise") is associated with Carramore. (Keywell Dep. at 26); (Keywell (Kelley) Dep. at 28); (Lefkofsky Dep. at 319.); (Shkolnik Dep. (Kelley), Ex. 10 at 53.)[2] Zebra changed its name and became Starbelly.com ("Starbelly"). (Lefkofsky Dep. at 14); (Schnapper Dep. at 66.) As used herein, "Starbelly" refers to Zebra both before and after the name change.

12. The Starbelly business concept used the Internet to decrease the promotional products industry's reliance on highly-paid commission salespeople in completing sales to customers, thereby decreasing the time and expense of processing

---

[2] Exhibit 10 is the Private Placement Memorandum ("PPM") concerning Starbelly's Series C financing. In the interest of judicial economy, Lefkofsky and Keywell offer excerpted portions of the PPM. Upon the Court's request, Lefkofsky and Keywell can provide the entire document, as well as full versions of any of the lengthy SEC documents excerpted in this motion.

4

orders for customized promotional products, while concurrently providing customers with an increased product inventory. (Keywell Dep. at 29, 81); (Shkolnik Dep. (Kelley), Ex. 10 at 3); (Hunt Dep. (Kelley) at 51); (Johnson Dep. (Kelley) at 98-102.) To this end, Starbelly developed StarStores, on-line retail stores specific to an individual company that allowed company employees to order a variety of promotional products from their desks. (Kilrea Dep. at 85.)

13. By late 1999, Starbelly had raised about $9.5 million in equity and was pursuing its Series C preferred stock offering through Hambrecht & Quist. (Keywell Dep. at 34); (Shkolnik Dep. (Kelley), Ex. 10 at 6, 53); (Johnson Dep. (Kelley) at 40-42.) Several venture capital firms delivered written term sheets to fund Starbelly's Series C offering. (Keywell Dep. (Kelley) at 79-80); (Johnson Dep. (Kelley) at 73.)

## HA-LO/Starbelly Merger

14. At or about the time of the Series C offering, HA-LO approached Starbelly about a possible merger transaction. (Nelson Dep. at 67-70.)

15. In 1999, HA-LO's Board of Directors was concerned about the Company's financial losses and strategic direction and believed HA-LO needed to take advantage of the Internet's benefits. (Nelson Dep. at 60-61); (Kelley Dep. at 160); (Schnapper Dep. at 37-38.) Certain directors believed HA-LO's highly-paid commission salespeople prevented the company from realizing profits in its core promotional products business, and that more on-line business would save costs and improve profits. (Kelley Dep. at 275-76.)

5

16.     During December 1999 and January 2000, HA-LO and Starbelly exchanged terms sheets; executed a confidentiality agreement; held numerous meetings and negotiations; and conducted legal, technological and operational due diligence investigations on one another. (Shkolnik Dep. (Kelley), Ex. 1, 3-5); (Keywell Dep., Ex. 10 at 50); (Katz Dep. (Kelley) at 27-30); (Hunt Dep. at 65-66, Ex. 6); (Edelstein Dep. at 46-52, 183, 268); (Podowitz Dep., Ex. 5.)

17.     On January 17, 2000, HA-LO's Board of Directors unanimously approved the merger, and the officers of HA-LO and Starbelly executed the merger agreement. (Keywell Dep., Ex. 10 at 50-51.)

18.     Following the merger announcement, HA-LO and Starbelly worked on multiple integration issues and obtaining SEC approval for the transaction. (Keywell Dep., Ex. 8.)

19.     On April 12, 2000, HA-LO disseminated a proxy statement to its shareholders seeking approval of the Starbelly merger. (Keywell Dep., Ex. 10.)

20.     Neither Keywell nor Lefkofsky was a HA-LO officer, director or employee before the May 3, 2000 merger between HA-LO and Starbelly, and neither directed HA-LO's activities before this time. (Shkolnick Dep. at 251-53.)

21.     On May 3, 2000, the HA-LO shareholders voted to approve the merger as follows: 1) $19 million in cash; 2) $17 million shares of HA-LO common stock valued at $170 million; and 3) $5.1 million preferred HA-LO shares valued at $51 million. (Keywell Dep., Ex. 10 at 3); (Kelley Dep. at 303.) Neither Keywell nor Bloomfield

6

received any cash in the HA-LO/Starbelly merger transaction. (Keywell Dep. at 257.) Bloomfield received redeemable preferred stock and HA-LO common stock in the merger transaction, and as a result, became HA-LO's single largest shareholder. (*Id.* at 256); (Simon Dep. at 112.) Similarly, neither Lefkofsky nor Coventry received any cash in the HA-LO/Starbelly merger transaction. (Keywell Dep. at 257.) Coventry received redeemable preferred stock and HA-LO common stock in the transaction. (*Id.*)

**Lefkofsky & Keywell's Roles at HA-LO Following the May 3, 2000 Merger**

22.     After HA-LO and Starbelly merged on May 3, 2000, Keywell became an officer of HA-LO (President) and a member of the HA-LO Board of Directors. (Keywell Dep. (CSFB) at 31); (Kelley Dep., Ex. 5 at 2.) He served on no Board Committees during his tenure on HA-LO's Board. (App. A, Keywell Affidavit at ¶ 4.) After the May 3, 2000 merger, Lefkofsky became an officer of HA-LO (Chief Operating Officer) and a member of the HA-LO Board of Directors. (Lefkofsky Dep. (Kelley) at 7-8.)

23.     As HA-LO's President, Keywell focused primarily on strategic matters and investor relations. (App A, Keywell Affidavit at ¶ 3(a)); (Keywell Dep. at 269-71.) He developed business opportunities, interacted with investment professionals and the investing public, and traveled frequently to investor road shows. (App A, Keywell Affidavit at ¶ 3(a)); (Keywell Dep. at 269-71.) During these interactions, Keywell outlined and marketed Starbelly's vision for the promotional products industry. (*Id.*) Keywell was not involved in day-to-day management activity. (Weisbach Dep. at 128.)

24.     Keywell also assessed existing and potential litigation against HA-LO as President. (App. A, Keywell Affidavit at ¶ 3(b)); (Keywell Dep. at 269-71); (Keywell

7

Dep. (Kelley) at 128.) Keywell had no involvement in the preparation of the Company's financial statements or securities disclosure documents. (App. A, Keywell Affidavit at ¶¶ 3(c), 3(e), 5.)

25. As HA-LO's Chief Operating Officer, Lefkofsky focused primarily on the day-to-day operations of HA-LO's promotional products division and reported to HA-LO's CEO. (Lefkofsky Dep. (Kelley) at 7-8.) He had no involvement in the preparation of HA-LO's financial statements or securities disclosure documents. (Lefkofsky Dep. at 190-91); (Kilrea Dep. at 14-15, 22-23, 263-64.)

26. Lefkofsky and Keywell had no involvement in HA-LO's accounting operations. (App. A, Keywell Affidavit at ¶ 3(f)); (Keywell Dep. at 271); (Lefkofsky Dep. at 190-91.) Similarly, they had no accounting background, and no input or involvement in preparing or reviewing HA-LO's financial statements. (Lefkofsky Dep. at 190-91); (Kilrea Dep. at 14-15, 22-23, 263-64); (Keywell Dep. at 125); (App. A, Keywell Affidavit at ¶¶ 3(c), 5.) Neither Lefkofsky nor Keywell interacted with Arthur Andersen, HA-LO's outside auditors. (Lefkofsky Dep. at 190-91); (App. A, Keywell Affidavit at ¶ 3(e).)

27. Lefkofsky and Keywell never prepared any financial statements for HA-LO. (Lefkofsky Dep. at 190-91); (Kilrea Dep. at 14-15, 22-23, 263-64); (App. A, Keywell Affidavit at ¶¶ 3(c), 5.) Keywell never signed any SEC Forms 10-K, 10-Q or 14-A during his entire tenure at HA-LO, while Lefkofsky only signed one, HA-LO's 2000 SEC Form 10-K. (*Id.* at ¶ 3(e).); (App. E, Keywell Answer at ¶ 19, Docket 82.) HA-LO Chief Financial Officer Kilrea prepared this Form, and Arthur Andersen, HA-

8

LO's outside auditors, reviewed it. (Kilrea Dep. at 14-15, 22-23, 263-64.) Neither Lefkofsky nor Keywell prepared or signed any HA-LO press releases. (App. A, Keywell Affidavit at ¶ 3(d).); (App. D, Complaint, Docket 27.)

## New CEO Marc Simon Terminates Keywell and the Starbelly Program

28.     By 2001, the promotional products business experienced its first downturn in over 25 years. (Simon Dep. at 296.)

29.     On February 6, 2001, the HA-LO Board approved Marc Simon's hiring as HA-LO's new CEO. (Weisbach Dep., Ex. 36.) Pursuant to Simon's employment agreement, he became CEO on February 22, 2001. (Simon Dep. at 9.)

30.     On February 27, 2001 – five days after becoming CEO – Simon terminated Keywell's employment with HA-LO. (Simon Dep. at 111-14.) Within two hours, Keywell vacated his office. (*Id.* at 112, 229.) After February 27, 2001, Keywell had no responsibilities at HA-LO other than as a Board member. (*Id.* at 120-21, 230.) After becoming CEO, Simon did not consult with or inform Keywell regarding any HA-LO business matters or decisions. (*Id.* at 120-21, 230.)

31.     Around the same time Simon terminated Keywell, Simon discontinued all efforts to integrate Starbelly's technology into HA-LO. (Simon Dep. at 56-57.) Simon drastically cut technology spending and laid off technology employees in general at HA-LO. (*Id.* at 294.) He pursued these actions without Board notice or approval. (*Id.* at 297.) On May 1, 2001, Lefkofsky resigned as an employee of HA-LO and no longer served in any capacity as an officer. (Simon Dep. at 111.)

9

## Brad Keywell's Board Dissention and Unauthorized Form 10-K Signature

32.     Although Keywell remained on the HA-LO Board until his June 23, 2001 resignation, he became an openly dissenting Board member.  (Simon Dep. at 230.) Keywell acted as an adversary at HA-LO Board meetings.  (*Id.*)  He attended all seven Board meetings following his termination as HA-LO President and preceding his resignation from the Board on June 23, 2001. (Weisbach Dep., Exs. 40-45.)

33.     Keywell wrote several letters to Simon and the HA-LO Board objecting to Simon's actions.  (Simon Dep., Ex. 36-43.)  Simon never responded to Keywell's letters and the Board took no action on them.  (*Id.* at 254-260); (Keywell Dep. (CSFB) at 44.)

34.     Although HA-LO included Keywell's signature on its 2000 SEC Form 10-K, he did not authorize its inclusion.  (App. B, HA-LO SEC 2000 Form 10-K.)  HA-LO later submitted an amended 2000 SEC Form 10-K omitting his signature.  (App. C, amended HA-LO SEC 2000 Form 10-K.)

35.     On June 23, 2001 Keywell resigned his Board position.  (Simon Dep., Ex. 43).

## Simon's Decisions Regarding the Preferred Shares, Starbelly Goodwill Write Down, UPSHOT Asset Restatements and HA-LO Bankruptcy

36.     Simon did not negotiate with Keywell concerning redemption of Bloomfield's redeemable preferred stock.  (Simon Dep. at 172, 307-09); (Keywell Dep. at 276-80.)  Simon had limited discussions with Lefkofsky regarding the redemption of the preferred shares.  (*Id.*)  Neither Keywell nor Lefkofsky had knowledge of, or input in Simon's decision to refuse to honor the preferred shares' put demand.  (*Id.*)

10

37.     Simon informed the HA-LO Board at an April 26, 2001 meeting that he intended to take a second quarter restructuring fee in which HA-LO would write down goodwill claimed in Starbelly's acquisition. (Simon Dep. at 248.) The Board did not vote on this action, and Keywell was not informed or consulted on the Starbelly write down prior to the meeting. (*Id.* at 248, 250, 297-98.)

38.     Following the meeting, HA-LO issued an April 26, 2001 press release notifying the investment community that it intended to take a restructuring charge including Starbelly goodwill and UPSHOT accrued revenue. (Simon Dep. at 70-72); (Kilrea Dep. at 161, Ex. 16.) Neither Lefkofsky nor Keywell had any knowledge of or input in Simon's decision to announce the restructuring charge involving these matters. (Simon Dep. at 297-98); (App. A, Keywell Affidavit at ¶ 3(h).)

39.     In March 2001, Simon retained Neal Wolf ("Wolf") of Orrick, Herrington & Sutcliffe, L.L.P. ("Orrick Herrington") and Silverman Consulting ("Silverman") to advise him concerning creditor's rights options surrounding the put date of the preferred stock and other issues. (Simon Dep. at 147-48, 187.) Simon did not inform Lefkofsky or Keywell of his retention of Orrick Herrington or Silverman at this time. (*Id.* at 248, 307-08.)

40.     On July 30, 2001, HA-LO declared bankruptcy. (Simon Dep. at 306.) Keywell had tendered his Board resignation over a month earlier. (*Id.*, Ex. 43.) Lefkofsky voted against HA-LO's bankruptcy filing and promptly resigned from the Board on August 2, 2001. (App. D, Complaint ¶ 15, Docket 27.)

11

Dated: December 19, 2003

By: _____

Donald K. S. Petersen, Esq.
Steven R. Lefkofsky, Esq.
Petersen & Lefkofsky, P.C.
39533 Woodward Avenue, Suite 170
Bloomfield Hills, MI 48304
Telephone: 248/644-6400
Facsimile: 248/644-9799

David L. Doyle, Esq.
Thomas P. Cimino, Jr., Esq.
Vedder, Price, Kaufman &
Kamholz, P.C.
222 North LaSalle Street, Suite 2300
Chicago, IL 60601-1003
Telephone: 312/609-7500
Facsimile: 312/609-5005

Co-Counsel for Defendant Eric Lefkofsky

By: _____

Allan T. Slagel
Howard A. Davis
Patricia S. Spratt
Shefsky & Froelich Ltd.
444 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60611
(312) 527-4000

Robert P. Cummins
Cummins & Cronin LLC
77 W. Wacker Drive, Suite 4800
Chicago, Illinois 60601
(312) 578-0500

882938_6

Co-Counsel for Defendant Bradley Keywell

12

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **NOTICE OF FILING** and **DEFENDANTS ERIC LEFKOFSKY & BRAD KEYWELL'S JOINT LOCAL RULE 56.1(A)(3) STATEMENT** were served on the attached Service List by placing same in properly addressed envelopes, full first class postage prepaid, and depositing same in the U.S. mail at 444 North Michigan Avenue, Chicago, Illinois 60611, before the hour of 5:00 p.m. this 19th day of December, 2003.

SUBSCRIBED AND SWORN TO
before me this 19th day of December, 2003

NOTARY PUBLIC

"OFFICIAL SEAL"
KATHLEEN M. McKAY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/13/2004

*Raymond Spagnola v. Gregory J. Kilrea, Lou Weisbach, John R. Kelley Jr.,*
*Linden D. Nelson, Bradley Keywell* and *Eric Lefkofsky*
**Case No. 02 C 720**

## SERVICE LIST

Marvin A. Miller
Jennifer Winter Sprengel
Matthew E. Van Tine
MILLER FAUCHER and CAFFERTY LLP
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602

Bart T. Murphy
Craig White
Samuel S. Cohen
Angela Toscas
WILMAN, HARROLD, ALLEN & DIXON
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606

Robert P. Cummins
Thomas C. Cronin
CUMMINS & CRONIN, LLC
77 West Wacker Drive
Suite 4800
Chicago, Illinois 60601

Steven R. Lefkofsky
PETERSEN & LEFKOFSKY, P.C.
39533 Woodward Avenue
Suite 170
Bloomfield Hills, Michigan 48304

Clifford S. Goodstein
Susan M. Greenwood
MILBERG WEISS BERSHAD
 HYNES & LERACH LLP
One Pennsylvania Plaza
49th Floor
New York, New York 10119

Thomas M. Durkin
Michelle Odorizzi
Sheri Drucker
MAYER, BROWN, ROWE & MAW
190 South LaSalle Street
Chicago, Illinois 60603

Lowell E. Sachnoff
David C. Bohan
Peter T. Berk
SACHNOFF & WEAVER, LTD.
30 South Wacker Drive
29th Floor
Chicago, Illinois 60606-7484

Simon J. Hill
HERTZ, SCHRAM & SARETSKY, P.C.
1760 South Telegraph Road
Suite 300
Bloomfield Hills, Michigan 48302

Thomas P. Cimino, Jr.
VEDDER, PRICE, KAUFMAN &
KAMMHOLZ, P.C.
222 North LaSalle Street
Suite 2300
Chicago, Illinois 60601

886188_1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAYMOND SPAGNOLA, Individually And On )
Behalf Of All Others Similarly Situated, )
                                        )
                Plaintiffs,             )
                                        )
        vs.                             )        No. 02 C 0270
                                        )
GREGORY J. KILREA, LOU WEISBACH, JOHN   )        Judge James F. Holderman
R. KELLEY JR., LINDEN D. NELSON, BRADLEY )
KEYWELL, and ERIC LEFKOFSKY,            )
                                        )
                Defendants.             )

## APPENDIX TO DEFENDANTS ERIC LEFKOFSKY AND BRAD KEYWELL'S JOINT LOCAL RULE 56.1(A)(3) STATEMENT

| Item | Page/Exhibit Numbers | Description |
|---|---|---|
| | 109-124, 145-148, 165-172, 187, 225-28, 245-256, 277-280, 293-300, 305-312, 378-385 | |
| Simon, continued | Exhibit 36 | Letter from Keywell to Simon and Weisbach, dated 5/8/01 |
| | Exhibit 37 | Letter from Keywell to Simon and Weisbach, dated 5/9/01 |
| | Exhibit 38 | Letter from Keywell to Simon and Weisbach, dated 5/901 |
| | Exhibit 39 | Letter from Keywell to Simon and Weisbach, dated 5/16/01 |
| | Exhibit 40 | Letter from Keywell to Simon and Weisbach, dated 5/16/01 |
| | Exhibit 41 | Letter from Keywell to Simon and Weisbach, dated 5/16/01 |
| | Exhibit 42 | Letter from Keywell to Simon and Weisbach, dated 5/16/01 |
| | Exhibit 43 | Letter from Keywell to Simon and Weisbach, dated 6/23/01 |
| Weisbach | 125-128 | Deposition Testimony |
| | Exhibit 36 | HA-LO Board of Directors Minutes, dated 2/6/01 |
| | Exhibit 40 | HA-LO Board of Directors Minutes, dated 3/2/01 |
| | Exhibit 41 | HA-LO Board of Directors Minutes, dated 3/9/01 |
| | Exhibit 42 | HA-LO Board of Directors Minutes, dated 4/13/01 |
| | Exhibit 43 | HA-LO Board of Directors Minutes, dated 4/24/01 |
| | Exhibit 44 | HA-LO Board of Directors Minutes, dated 5/7/01 |
| | Exhibit 45 | HA-LO Board of Directors Minutes, dated 5/21/01 |
| Exhibit A | | Brad Keywell's Affidavit |
| Exhibit B | | Excerpted SEC Form 10-K, filed 4/2/01 |

| Item | Page/Exhibit Numbers | Description |
|---|---|---|
| Exhibit C | | Amended Excerpted SEC Form 10-K, filed 4/27/01 |
| Exhibit D | ¶¶ 1-16 | Excerpted Amended Class Action Complaint, Docket 27, filed 5/28/02 |
| Exhibit E | ¶ 19 | Excerpted Keywell Answer, Docket 82, filed 9/11/02 |
| Exhibit F | 38, n.23 | Excerpted Plaintiffs' Response to Defendants' Motion to Dismiss, Docket 48, filed 7/30/02 |

885249_1

# SEE CASE FILE FOR EXHIBITS